**COPY OF SUMMONS**

## SUPERIOR COURT OF CLAYTON COUNTY

## STATE OF GEORGIA

Victoria R. Ducre

c/o Cary S. Wiggins          Plaintiff

260 Peachtree St., NW, Suite 401

Atlanta, GA 30303          Address

CASE NUMBER 13CV03874-6

**SUMMONS**

_____ Term, 20 13

CALENDAR DATES

VS.

Ryan K. Archer

760 Chaseridge Drive   Defendant

McDonough, GA 30253

Address

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is: Cary S. Wiggins

Wiggins Law Group

260 Peachtree St., NW, Suite 401

Atlanta, GA 30303

(404) 659-2880; cary@wigginslawgroup.com

an answer to the complaint which is herewith served upon you, **within 30 days** after service of this summons, upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Jacquline D. Wills
Clerk of Court
Superior Court Division

By_____
Deputy Clerk

COPY OF SUMMONS.wpd                                                                 01/01/11



EXHIBIT

A

FILED

2013 SEP 17 PM 2: 41

JACQULINE D. WILLS
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

VICTORIA R. DUCRE,           *
                             *
        Plaintiff,           *    CIVIL ACTION FILE
                             *
vs.                          *    NO. 13CV03874-6
                             *
RYAN K. ARCHER,              *
individually,                *
                             *    JURY TRIAL DEMANDED
        Defendant.           *

## COMPLAINT

### NATURE OF THE CASE

1.

This civil action concerns the unlawful detention, arrest and prosecution of Victoria R. Ducre by Officer Ryan K. Archer, then working for the Clayton County Police Department.  Ducre is seeking monetary damages, attorney's fees, costs and a trial by jury.

### PARTIES

2.

Plaintiff Victoria R. Ducre ("Ducre") is a resident of Clayton County, Georgia.

3.

Defendant Ryan K. Archer ("Archer") was an officer for the Clayton County Police Department acting under color of state law at all times relevant to the allegations of this complaint.  Archer resides in the State of Georgia.  Archer

is sued in his individual capacity.

## VENUE

### 4.

All acts or omissions alleged in this complaint occurred in Clayton County, Georgia, and therefore venue is proper.

## JURISDICTION

### 5.

The Court has jurisdiction over Archer and the subject matter of this complaint.

## FACTS

### 6.

On January 15, 2012, at about 9:00 p.m., Ducre was driving from her home along Thomas Road, approaching the intersection of Pointe South Parkway.  There Thomas Road is a two-lane road.

### 7.

As Ducre approached the intersection, she saw at least four patrol cars pulled over to the right side of Thomas Road with their blue lights activated.  Ducre slowed her car to well below the posted speed limit, exercising utmost caution, as she approached the patrol cars.  She was prepared to stop if asked.

8.

Before she could pass the patrol cars, Officer Archer walked out onto the street in front of her car and ordered Ducre to stop.  She stopped immediately.  From in front of Ducre's car, Archer began shouting at her to move over, but because he did not move, Ducre could not move her car. (Even had Archer not been standing directly in front of her car, she could not move to the left into oncoming traffic or to the right into the parked patrol cars.)

9.

Archer came to Ducre's window where he continued to yell at her, asking questions like, "How long have you been driving?"  He asked for (and she gave him) her driver's license and he went over to the patrol cars with it.

10.

Archer returned to Ducre and informed her that he was writing her a citation "for not moving over."  See O.C.G.A. § 40-6-16.  Ducre was mildly shocked because she knew that she had done nothing wrong.

11.

When Archer handed Ducre the citation and told her to sign it, Ducre told Archer that she did not want to sign the citation because she had done nothing wrong.  Archer did not follow the mandate of O.C.G.A. § 40-13-2.1, which provides

in part:

> A person who is issued a citation as provided in this chapter or Code Section 17-6-11, relating to display of driver's license in lieu of bail, shall sign the citation to acknowledge receipt of the citation and of his or her obligation to appear for trial. The officer shall advise the person that signing the citation is not an admission of guilt and that failure to sign will result in the person having to post a cash bond. If the person refuses to sign the citation, it shall constitute reasonable cause to believe that the person will not appear at trial and the officer may bring the person before a judicial officer or traffic violations bureau to post a bond as is otherwise provided by law.

O.C.G.A. § 40-13-2.1(a).

### 12.

Considering the circumstances, Ducre was polite and cooperative. Archer nonetheless ordered Ducre out of the car. He then handcuffed Ducre and told her that she was going to jail.

### 13.

When Ducre asked why she was going to jail, Archer explained that it was because she had refused to sign the citation. Ducre immediately offered to sign the ticket, but Archer told her, "it's too late."

### 14.

Archer transported Ducre to the Clayton County Jail, where she was booked, photographed and fingerprinted.

15.

In the meantime, Archer, under oath, executed a warrantless arrest probable cause affidavit. In his affidavit, Archer alleged that Ducre "did not move over" and that Ducre "failed to stop." Archer failed to mention that Ducre could not move over; he lied when saying Ducre failed to stop.

16.

Also in his affidavit, Archer asked that Ducre "be held in the common jail of Clayton County unless otherwise having posted Bond or having been released by a Judge of the Magistrate Court of Clayton County."

17.

Ducre spent several hours in jail.

18.

On January 18, 2012, Ducre filed a formal complaint against Archer with the Clayton County Police Department. In that complaint, she informed the Department that Archer did not explain the consequences of signing, or refusing to sign, the citation.

19.

On February 16, 2012, Lieutenant Craig Hammer (of CCPD) informed Ducre that the Department had investigated her complaint, and that this investigation "disclosed sufficient

evidence to take corrective action against the officer(s) involved for failing to properly follow departmental and or Clayton County rules and procedures."

20.

On March 29, 2012, based on Archer's untrue testimony, the State drafted an accusation against Ducre, alleging two counts: (1) "approaching authorized emergency vehicles"; and (2) "failure to obey officer."

21.

Ducre was forced to hire a criminal defense attorney and appear in court.

22.

The accusation against Ducre was dismissed after the State moved for nolle prosequi on July 12, 2012.

23.

As a direct and proximate cause of this unlawful arrest, detention and prosecution, Ducre has experienced pain and suffering, extreme emotional distress, anxiety, humiliation, outrage and substantial damages to both her professional and personal reputation.

COUNT 1

42 U.S.C. § 1983: False Arrest / Unlawful Seizure

in violation of the Fourth Amendment

24.

Ducre incorporates paragraphs 1 through 23 here by this reference.

25.

Based upon his experience, knowledge and training as a law enforcement officer, Archer knew that no arguable probable cause, much less probable cause, existed to believe that Ducre committed a crime on January 15, 2012.

26.

An objectively reasonable law enforcement officer in Archer's position would have known that no arguable probable cause existed to arrest Ducre.

27.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of her liberty violates the Fourth Amendment to the United States Constitution and the Georgia Constitution (Art. I, § 1, ¶¶ I & XIII).

28.

As a direct and proximate cause Archer's acts and

omissions, Ducre was seized and detained against her will, entitling her to compensatory, punitive and nominal damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT 2

### 42 U.S.C. § 1983: Malicious Prosecution
### in violation of the Fourth Amendment

29.

Ducre incorporates paragraphs 1 through 23 here by this reference.

30.

Archer initiated a criminal prosecution against Ducre for violating O.C.G.A. § 40-6-16 (Spencer Pass Law), and he knew or should have known that no arguable probable cause existed to believe that Ducre had violated this Georgia statute or committed any crime recognized by law.

31.

Archer initiated the arrest and maintained the prosecution of Ducre by including false or reckless statements and making material omissions in his affidavit supporting Ducre's arrest, thus displaying malice and a reckless disregard for Duggan's civil rights.

32.

The arrest and prosecution forced Ducre to appear in

Clayton County Superior Court numerous times on her criminal case.

### 33.

This criminal prosecution terminated favorably for Ducre.

### 34.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution and the Georgia Constitution (Art. I, § 1, ¶ I).

### 35.

As a result of this prosecution, Ducre suffered emotional, mental and financial injury, entitling her to recover nominal, compensatory and punitive damages against the defendants in an amount to be determined by the enlightened conscience of the jury.

## COUNT 3

### O.C.G.A. § 51-7-1: Malicious Arrest

### 36.

Ducre incorporates paragraphs 1 through 23 here by this reference.

37.

Archer initiated a criminal prosecution against Ducre for violating O.C.G.A. § 40-6-16 (Spencer Pass Law), and he knew or should have known that no arguable probable cause existed to believe that Ducre had violated this Georgia statute or committed any crime recognized by law.

38.

Archer initiated the arrest and prosecution of Ducre with malice, as interpreted under Georgia law.

39.

This criminal prosecution terminated favorably for Ducre.

40.

As a result of the arrest, Ducre has suffered emotional, mental and financial injury, entitling her to recover nominal, compensatory and punitive damages against Archer for the loss of her rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

COUNT 4

O.C.G.A. § 51-7-40: Malicious Prosecution

41.

Ducre incorporates paragraphs 1 through 23 here by this reference.

42.

Archer initiated and maintained a criminal prosecution against Ducre for violating O.C.G.A. § 40-6-16 (Spencer Pass Law), and he knew or should have known that no arguable probable cause existed to believe that Ducre had violated this Georgia statute or committed any crime recognized by law.

43.

Archer initiated and maintained the arrest and prosecution of Ducre with malice, as interpreted under Georgia law.

44.

This criminal prosecution terminated favorably for Ducre.

45.

As a result of the arrest, Ducre has suffered emotional, mental and financial injury, entitling her to recover nominal, compensatory and punitive damages against Archer for the loss of her rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

COUNT 5

Negligence: Breach of Ministerial Duty

46.

Ducre incorporates paragraphs 1 through 23 here by this reference.

47.

After Archer decided to issue Ducre a citation for violating the Spencer Pass Law, he had a ministerial duty to advise Ducre "that signing the citation is not an admission of guilt and that failure to sign will result in the person having to post a cash bond."  O.C.G.A. § 40-13-2.1(a).

48.

Archer breached this duty resulting in a deprivation of liberty interests protected by the Georgia Constitution's due process guarantees.  See Ga. Const. Art. I, § I, ¶¶ I & XIII.

49.

Archer's failure to perform this ministerial duty, which resulted in the unlawful arrest and detention of Ducre, entitles Ducre to recover nominal and compensatory and punitive damages against Archer for the loss of her rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

COUNT 6

O.C.G.A. § 51-7-20: False Imprisonment

50.

Ducre incorporates paragraphs 1 through 23 here by this reference.

51.

On January 15, 2012, Archer unlawfully detained Ducre against her will, depriving her of personal liberty.

52.

The detention of Ducre was unlawful because it was not predicated on any process and no exigent circumstances existed to justify Archer's conduct.

53.

There would not have been a failure of justice had Archer permitted Ducre to sign the citation and appear in court as Archer had initally elected to do.

54.

As a result of her unlawful detention, Ducre has suffered emotional, mental and financial injury, entitling her to recover compensatory and punitive damages against Archer for the loss of her rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

## COUNT 7

Punitive Damages

55.

Ducre incorporates paragraphs 1 through 23 here by this reference.

56.

Archer's actions described in this complaint displayed a want of care showing a conscious indifference to consequences as contemplated under O.C.G.A. § 51-12-5.1.

## COUNT 8

O.C.G.A. § 13-6-11: Attorney's Fees

57.

Ducre incorporates paragraphs 1 through 23 here by this reference.

58.

By his acts and omissions specified above, as well as other conduct, Archer has acted in bad faith, has been stubbornly litigious and has caused Ducre unnecessary trouble and expense.

59.

Ducre is entitled to recover her actual expenses of litigation, including attorney's fees, from Archer.

WHEREFORE, Ducre respectfully requests the following

relief:

(a)   That as to Counts 1, 2, 3, 4, 5 and 6, the Court award Ducre compensatory, punitive (see also Count 7), and nominal damages against Archer in an amount to be determined by the enlightened conscience of an impartial jury;

(b)   That the Court grant the Ducre her reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(d)   That Ducre be granted a trial by jury on all issues so triable; and

(e)   That Ducre be granted such other and further relief as this Court deems just and proper.

Respectfully submitted,

WIGGINS LAW GROUP

BY:_____

Cary S. Wiggins
Ga. Bar No. 757657

Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone:   (404) 659-2880
Facsimile:   (404) 659-3272
www.wigginslawgroup.com